Citation Nr: 1823347 
Decision Date: 04/16/18 Archive Date: 04/25/18

DOCKET NO. 14-31 054 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to special monthly compensation (SMC) for loss of special organ (fallopian tube). 

2. Entitlement to compensation under 38 U.S.C. § 1151 (2012) for heart condition, loss of thyroid gland, liver damage and kidney condition and for graves' disease associated with MRSA. 

3. Entitlement to service connection for residuals of hysterectomy including scars secondary to ovarian cysts. 
 

REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J.T.Stallings, Associate Counsel


INTRODUCTION

The Veteran had active service from May 1990 to May 1994.

These matters come before the Board of Veterans' Appeals (Board) from September 2012 and May 2014 rating decisions of a Department of Veterans Affairs (VA), Regional Office (RO) in St. Louis, Missouri.

These claims were previously remanded by the Board in November 2015 for additional development. The development has been complete and jurisdiction has returned to the Board. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The issue of service connection for residuals of a hysterectomy is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's loss of use of a creative organ is not due to a service-connected disability

2. The Veteran developed the additional disabilities of endocarditis and loss of thyroid gland, and Graves ' disease following 2003 and 2008 VA medical treatment, but the disorders are not as the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA.

3. There is no diagnosis for a chronic liver or kidney additional disability following VA treatment. 


CONCLUSIONS OF LAW

1. The criteria for special monthly compensation for loss of use of a creative organ, associated with a right fallopian tube, are not met. 38 U.S.C. § 1114(k) (2012); 38 C.F.R. § 3.350(a) (2017).

2. The criteria for compensation under 38 U.S.C. § 1151 for heart condition, loss of thyroid gland, liver damage and kidney condition associated with MRSA and graves' disease are not met. 38 U.S.C. § § 1151, 5107 (2012); 38 C.F.R. § 3.361 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Neither the Veteran nor the representative has raised any issues with the duty to notify or duty to assist that have not been rectified. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

II. Loss of a creative organ 

SMC is a statutory award, in addition to awards based on the schedular evaluations provided by the diagnostic codes in the VA Rating Schedule. SMC is payable at a specified rate if the Veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs.

Here, the Veteran seeks SMC based on the loss of her right fallopian tube. However, the Veteran's fallopian tube has not been service-connected, most recently denied in a December 2017 RO decision that has not been appealed to the Board. Thus, a grant of SMC is also not warranted for this claim as the creative organ is not service connected and the claim must be denied.

III. 38 U.S.C. 1511 Claim

Compensation under 38 U.S.C. § 1151 is granted for additional disability if the additional disability was not the result of willful misconduct, the actual cause of the additional disability was VA hospital care, medical or surgical treatment, or examination, and the proximate cause of the additional disability was either carelessness, negligence, lack of proper skill, error in judgment or similar fault, or an event not reasonably foreseeable. 38 U.S.C. § 1151(a); 38 C.F.R. § 3.361(c), (d).

The mere fact that the Veteran received care, treatment, or examination and has an additional disability does not establish actual causation. Evidence must show that VA hospital care, medical or surgical treatment, or examination resulted in additional disability. 38 C.F.R. § 3.361(c)(1). 

To determine whether the Veteran has an additional disability, VA compares his condition immediately before the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program upon which the claim is based, to the Veteran's condition after such care, treatment, examination, services, or program has stopped. VA considers each involved body part or system separately. 38 C.F.R. § 3.361(b).

To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran's additional disability, it must be shown that the hospital care or medical or surgical treatment caused the veteran's additional disability; and either (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) VA furnished the hospital care or medical or surgical treatment without the veteran's informed consent. 38 C.F.R. § 3.361(d)(1).

The Veteran bears the burden of presenting and supporting her claim for benefits. 38 U.S.C. § 5107. In its evaluation, the Board considers all information and lay and medical evidence of record. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board gives the benefit of the doubt to the claimant. Id. 

In making any determination the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of her current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. See Kahana v. Shinseki, 24 Vet. App. 428 (2011).

The Veteran meets the requirements of an additional disability for some of her claimed additional disabilities but not all. The evidence of record establishes that the Veteran had an additional heart disability after receiving VA treatment as well as loss of her thyroid gland and Graves ' disease. However, although there are noted symptoms throughout the claims file, the Veteran does not have diagnosed chronic liver and kidney disabilities. The Veteran failed to appear at the VA examinations scheduled for these disabilities and the evidence of record does not indicate a diagnosis for these conditions. Therefore, those particular claims must be denied as an additional disability is a critical requirement for these types of claims. However, even with the other additional disabilities that the Veteran does have, an 1151 claim cannot be granted. 

The remaining question, is whether there was negligence, or similar instance of fault on VA's part, or whether the additional disability was an event not reasonable foreseeable. 38 C.F.R. §§ 3.361(c)(d).

The Veteran was seen in VA facilities in both 2003 and 2008 for her asthma and respiratory conditions and an infection arose from her receiving intervenous medications, particularly MRSA. The Veteran claims the infection arose from the nurses not taking necessary sanitary precautions in between different patients and not cleaning her PICC tube in which she received the medication, often enough as well as overdosing medication.

However, following a review of the pertinent records, a VA examiner in September 2017 found that the Veteran's disabilities were less likely than not due to complications stemming from her intravenous medication treatment she received. The examiner found that the Veteran's disabilities were not caused by carelessness, negligence, lack of skill, or similar incidences of fault on the part of the VA personnel. The examiner found that the providers in 2003 and 2008 gave the Veteran the appropriate level of care. The Board also notes that the Veteran's records notate when the Veteran's IV was cleaned and changed throughout her medical records.

The Veteran has offered no competent medical opinion suggesting her heart condition, loss of thyroid gland and graves' disease associated with MRSA was proximately caused by carelessness, negligence, lack of proper skill, error in judgment, or other fault related to VA treatment, or that her additional disability was an event not reasonably foreseeable. The Veteran claims in a March 2008 statement that her primary care physician stated that her conditions were due to an infection. The actual opinion is not provided in the claims file, but even giving benefit of the doubt to the Veteran, this statement does not mean that the infection was the result of any mistreatment by VA personnel or negligence in her treatment. 

Further, the Veteran has neither asserted, nor does the evidence show, that VA provided any treatment without her informed consent. In fact, the consent form for the intravenous medication list known risks of the procedure with a MRSA infection specifically noted. The Veteran also received written materials discussing the potential MRSA infection as well. 

While the Veteran is competent to report symptoms such as pain, Layno v. Brown, 6 Vet. App. 465 (1994), she is not competent to determine whether her disabilities were the fault of VA. To offer such an opinion requires specialized knowledge of standards of intravenous treatments, risks of treatment, and frequency of side effects. The Veteran is not a health care provider and the record does not otherwise show that he possesses the knowledge necessary to make these determinations. Therefore, the Board finds the medical opinion more probative to this claim than the Veteran's lay statements. 

Given these facts, the fact that the appellant was provided informed consent, and the absence of any competent evidence suggesting that VA care was careless, negligent, administered due a lack of proper skill, judgment error or like fault, the Board concludes that a preponderance of the evidence is against finding entitlement to compensation under the provisions of 38 U.S.C. § 1151 for heart condition, loss of thyroid gland, liver damage and kidney condition and graves' disease associated with MRSA as a result of VA treatment. The benefit-of-the doubt rule does not apply, and the claim is denied.


ORDER

Entitlement to special monthly compensation (SMC) for loss of special organ (fallopian tube) is denied.

Entitlement to compensation under 38 U.S.C. § 1151 (2012) for heart condition, loss of thyroid gland, liver damage and kidney condition and graves' disease associated with MRSA is denied. 


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure proper development regarding the Veteran's claim on appeal for service connection for residuals of hysterectomy to include scars secondary to ovarian cysts. 

VA's duty to assist includes obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. 38 U.S.C. § 5103A(d) (2012). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran's September 2017 VA opinion is inadequate to decide the claim for service connection for residuals of a hysterectomy secondary to ovarian cysts. Although the examiner did provide a secondary service connection opinion it mainly addressed how it is less likely that the Veteran's hysterectomy is secondary to recurrent miscarriages. The question at hand is whether or not the Veteran's need for a hysterectomy was caused or aggravated by her service-connected ovarian cysts. Therefore, the Board needs further clarification prior to the adjudication of this claim. 

Furthermore, the Veteran's claim for special monthly compensation for her hysterectomy is inextricably intertwined with decision of service connection for the residuals of the hysterectomy, which is being remanded for further adjudication. Therefore, a final decision on the issue of SMC for the hysterectomy cannot be rendered at this time. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. If at all possible, request the same examiner who performed the December 2017 examination to review the record. If that examiner is not available, refer the Veteran's file to one of equal expertise. The claims file, including a copy of this remand, must be made available to and be reviewed by the examiner. An additional examination should be given if necessary to address the requests of these directives.

The examiner is asked to provide explanations for the following questions with reference to relevant evidence of record as appropriate, for any and all conclusions reached:

a.) Is it at least as likely as not (a 50 percent probability or greater) that the Veteran's hysterectomy disability was related to or caused by the service-connected ovarian cysts? 

b) If not, is it at least as likely as not (a 50 percent probability or greater) that the Veteran's hysterectomy disability was aggravated (permanently worsened beyond the natural progression of the disease) by the service-connected ovarian cysts disability? 

2. Following the above development, review the opinion(s) in order to ensure adequacy and compliance with the above directives. If any opinion is inadequate for any reason, take whatever corrective action is deemed necessary. The opinions should include addressing and reconciling any conflicting opinions within the claim file specifically the December 2017opinion if necessary. If the examiner finds it impossible to provide any part of the requested opinions without resort to pure speculation, he or she should so indicate and provide a rationale as to why such a finding is made. 

3. Finally, readjudicate the Veteran's claims on appeal. If the benefits sought remain denied, provide the Veteran with a supplemental statement of the case (SSOC). 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
A. P. SIMPSON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs